IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 11-3402-TUC-DCB(LAB) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Patrick Ronald Woodard, Robbin Shea Brown, | ) | |
| Defendants. | ) | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to dismiss for lack of reasonable suspicion/probable cause. The defendant, Patrick Ronald Woodard, argues that all evidence obtained directly or derivatively as a result of his warrantless arrest on July 21, 2012 must be suppressed because he was arrested without probable cause, in violation of his Fourth and Fifth Amendment rights. (Doc. 166). Defendant Robbin Shea Brown filed a joinder asking that the case be dismissed or, alternatively, that all evidence flowing from his arrest be excluded from trial. (Doc. 178).

An evidentiary hearing was held on December 4, 2012. Immigration and Customs Enforcement (ICE) Agent Ian Cruikshank testified.

**Charge:**

The defendants are charged by indictment in Count 1 with conspiracy to possess with intent to distribute 440 kilograms of marijuana, in violation of Title 21 United States Code §§ 841(a)(1) and 841(b)(1)(B)(vii); and in Count 3 with possession with intent to distribute

306 kilograms of marijuana, in violation of Title 21 United States Code §§ 841(a)(1) and 841(b)(1)(B)(vii) and Title 18 United States Code § 2. (Doc. 1). Brown alone is charged in Count 2 with possession with intent to distribute 134 kilograms of marijuana, in violation of Title 21 United States Code §§ 841(a)(1) and 841(b)(1)(B)(viii) and Title 18 United States Code § 2.

**Motion to Dismiss:**

The defendants argue that their Fourth Amendment rights were violated when they were arrested on July 21, 2011 without a warrant and without probable cause. They claim that any evidence obtained as a result of the illegal arrests must be suppressed.

The Court concludes the initial seizures were valid *Terry* stops which developed into arrests based on probable cause. Therefore, the evidence acquired pursuant to the arrests is admissible at trial.

**EVIDENCE:**

*Ian Cruikshank*

Ian Cruikshank is a Criminal Investigator, Special Agent with Homeland Security Investigations (HSI). (Doc. 201, p. 59 ). Cruikshank testified that Co-Defendant Joshua Breshears was under investigation on 7/18/11 when Cruikshank first observed a rented Toyota 4Runner parked on the street in front of the house that Breshears shared with Green Bressler. (Doc. 201, pp. 59-61). Cruikshank determined that the vehicle's license plate was registered to a local rental agency often used by drug and alien smuggling organizations and it had been found loaded with marijuana twice in the past. (Doc. 201, pp. 60-61; Ex. 11, p. 2). After several hours of surveillance, agents affixed a GPS tracking device to the vehicle at about 9:30 p.m. (Doc. 201, p. 59).

By 7/18/11 agents were aware of Brown because he was associated with Breshears and Green Bressler in prior border patrol encounters. (Doc. 201, p. 73). It was only after the arrests in this case that it was determined that the 4Runner was rented by Brown. (Doc. 201, p. 83). Inmate telephone calls had been intercepted from Green Bressler to Breshears wherein Breshears discussed paying for rental vehicles and going to the rental agency with Brown to

rent a vehicle. (Doc. 201, p. 74). Those phone calls were intercepted in connection with a drug transaction from 7/2/11. (Doc. 201, p. 75).

On 7/19/11, the 4Runner was tracked leaving Breshears' house, visiting two apartment complexes and returning to the house. (Ex. 11, p. 2). On 7/20/11, Breshears was seen driving the vehicle around town, including to the same two apartment complexes. (Doc. 201, p. 64; Ex. 11, p. 2).

On 7/21/11, the 4Runner was tracked by GPS tracking device traveling from Tucson, down a dirt road to a remote, known drug trafficking area south of Sonoita. It stopped in a rural area for about 5 minutes. (Doc. 201, pp. 95-96; Ex. 11, p. 3). It took a circuitous route back to Tucson, bypassing the Sonoita Border Patrol checkpoint. (Doc. 201, p. 40; Ex. 11, p.3). While en route back to Tucson, at 2:25 p.m., Border Patrol Agent Christopher Warren conducted a traffic stop on a Toyota Camry driven by Brown. Brown was released. According to the GPS device, the 4Runner was about 400 yards away at the time. (Doc. 201, p. 97).

Agents later observed the 4Runner, the Toyota Camry and another vehicle driving into Tucson from the east on Interstate 10. (Doc. 201, pp. 66-67). Agents followed all three vehicles to the Red Lobster parking lot where Woodard exited the 4Runner'sdriver's side door. (Doc. 201, p. 40, 67; Ex. 11, p. 3). Noe Guerrero exited the passenger side of the vehicle. Several individuals met by the 4Runner which then left. (Ex. 11, p. 3). The tracking device indicated the vehicle went to a house on Clear River Street. (Ex. 11, p. 4). Agents observed the 4Runner exit the garage of the house and travel to the Albertson's parking lot. (Doc. 201, p. 87).

Woodard, Brown, Guerrero and Co-defendant Breshears were seen together at the Albertson's parking lot. (Doc. 201, p. 41). They all arrived together in the Toyota Camry. (Doc. 201, p. 42). The 4Runner was also in the parking lot at the time but was not occupied. (Doc. 201, p. 42). Agents approached the defendants and detained them. (Ex. 11, p. 4). After the detention, agents could smell the odor of fresh marijuana coming from the 4Runner. (Ex. 11, p. 4). The agents monitoring the house on Clear River Street smelled the odor of

1 fresh marijuana coming from the front door. (Ex. 11, p. 4).

2 **DISCUSSION**:

3 The defendants argue that at the time of their arrests there was no probable cause to
4 believe that they had engaged in criminal activity, so that their warrantless arrests violated
5 their Fourth Amendment rights.

6 The Fourth Amendment protects people against unreasonable searches and seizures and
7 requires probable cause to support a warrantless arrest. *Maryland v. Pringle*, 540 U.S. 366,
8 369-70, 124 S.Ct. 795, 799 (2003). Probable cause is based on the totality of the
9 circumstances and exists when a reasonably cautious person could conclude that there is a
10 fair probability that a specific person committed a crime. *U.S. v. Ortiz-Hernandez*, 427 F.3d
11 567, 573 (9th Cir. 2001), *cert. denied*, 127 S.Ct. 358 (2006). "The standard for probable
12 cause is not terribly demanding." *U.S. v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005).

13 To justify an initial inquiry and a brief investigatory detention there must be reasonable
14 suspicion. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

15 When the agents approached the defendants in the Albertson's parking lot on 7/21/11 they
16 knew that the 4Runner was a rental vehicle, rented from an agency often used by drug and
17 alien smuggling organizations. They knew that the vehicle was found on two prior occasions
18 loaded with marijuana. The vehicle was parked in front of Joshua Breshears' residence while
19 Breshears was under investigation for drug trafficking. Defendant Brown was a known
20 associate of Breshears from previous Border Patrol encounters. Agents had also intercepted
21 telephone calls from Breshears' housemate, who was in custody at the time, to Breshears
22 where they discussed Breshears paying for a rental vehicle and going to the car rental agency
23 with Brown. Agents knew that the 4Runner was driven by Breshears at some point during
24 the investigation.

25 On 7/21/11, the 4Runner traveled to a remote area known for drug trafficking, where it
26 stopped for 5 minutes before returning to Tucson on a circuitous route that avoided a border
27 patrol checkpoint. The agents knew that Brown was driving the Toyota Camry in that same
28 area, with the 4Runner nearby. The 4Runner and the Camry met in a parking lot in Tucson

| | |
|---|---|
| 1 | where Woodard and Noe Guerrero were seen exiting the 4Runner.  A group of people met |
| 2 | near the 4Runner which then drove to a house.  Agents at the house smelled raw marijuana |
| 3 | in the area of the front door.  The 4Runner exited the garage and returned to another parking |
| 4 | lot. |
| 5 | Woodard, Brown, Breshears and Guerrero arrived in the Camry at the same parking lot |
| 6 | where the 4Runner was located.  Agents approached the men and detained them.  They then |
| 7 | smelled the odor of raw marijuana coming from the 4Runner. |
| 8 | At a minimum there was reasonable suspicion sufficient to justify a brief investigatory |
| 9 | detention when the agents first approached the defendants.  Thereafter, based on the totality |
| 10 | of the circumstances, including the odor of marijuana coming from the 4Runner, there was |
| 11 | probable cause to arrest Brown and Woodard. |
| 12 | **RECOMMENDATION:** |
| 13 | In view of the foregoing, it is recommended that, after its independent review of the |
| 14 | record, the District Court **DENY** the motions to dismiss. (Doc. 166, 178). |
| 15 | Defense counsel may serve and file written objections within 14 days.  If objections are |
| 16 | not timely filed, the party's right to de novo review may be waived.  No reply to objections |
| 17 | shall be filed unless leave is granted from the District Court. |
| 18 | The Clerk of the Court is directed to send a copy of this Report and Recommendation to |
| 19 | all parties. |
| 20 | DATED this 4th day of January, 2013. |

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge