IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 11-3402-TUC-DCB(LAB) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Patrick Ronald Woodard, | |
| Defendant. | |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress statements. The defendant, Patrick Ronald Woodard, argues that his post-arrest statements must be suppressed because they were coerced and involuntary, in violation of his Fourth and Fifth Amendment rights. (Doc. 127). Defendant filed a supplemental motion to suppress statements on November 1, 2012. (Doc. 167).

Evidentiary hearings were held on October 15, 2012 and December 4, 2012. Exhibits 1 and 2, an audio recording and written transcript of the October 6, 2011 interrogation, were submitted for the Court's review. Testifying were Agents Ian Cruikshank, Melissa Conover and Andrew Cooper, and Defendant Woodard.

**Charge:**

The defendant is charged by indictment in Count 1 with conspiracy to possess with intent to distribute 440 kilograms of marijuana, in violation of Title 21 United States Code §§ 841(a)(1) and 841(b)(1)(B)(vii); and in Count 3 with possession with intent to distribute 306 kilograms of marijuana, in violation of Title 21 United States Code §§ 841(a)(1) and

841(b)(1)(B)(vii) and Title 18 United States Code § 2. (Doc. 1).

**Motion to Suppress:**

The defendant, Patrick Ronald Woodard, argues his Fourth and Fifth Amendment rights were violated when during custodial interrogations, and after *Miranda* warnings were administered, agents made promises and assurances that induced him to make inculpatory statements. He claims that his statements were involuntary and must be suppressed.

The Court concludes the statements were voluntary and are, therefore, admissible at trial.

**EVIDENCE:**

1. 7/21/11 Statement - (10/15/12 Evidentiary Hearing)

*Ian Cruikshank*

Ian Cruikshank is a United States Immigration and Customs Enforcement (ICE) agent with Homeland Security Investigations (HSI). (Doc. 154, p. 11 ). Cruikshank testified that Defendant Woodard was arrested on 7/21/11 at about 5:00 p.m. and brought to the HSI ICE office. (Doc.154, p. 21). Woodard was interviewed in a room that contained a table and chairs on one side and a bank of computers on the other side. The interview began at about 10:00 or 10:30 p.m. and lasted for 30 to 45 minutes. (Doc. 154, pp. 12, 18). Agents Cruikshank and Cooper were present, dressed in street attire with no firearms visible. (Doc. 154, p. 12). Other agents, including Melissa Conover, were in and out of the room, using the computers for processing other defendants.

Woodard was *Mirandized* and waived his rights as evidenced by a signed U.S. ICE Statement of Rights form dated 7/21/11 with a time of 2231, 10:31 p.m. (Doc. 154, pp. 15-16; Ex. 1). Cruikshank testified that there were no promises, threats or physical violence. Woodard was asked for information about the other suspects. (Doc. 154, pp. 17-18). After the oral interview, Cruikshank asked Woodard to write what he had told the agents. (Doc. 154, p. 19). The agents asked Woodard to conclude the written statement with a clause stating that there were no promises or threats. (Doc. 154, p. 20, Exhibit 2).

The agents did not tell Woodard he would not be charged. They let him leave after his statement because they did not have enough evidence to detain him. (Doc. 154, pp. 20-21).

On cross-examination, Cruikshank testified that Co-Defendants Brown and Breshears were arrested at the same time as Woodard. They refused to speak with the agents and were detained overnight. They were released the next day by the Court when agents were unable to obtain complaints against them. (Doc. 154, p. 23). Cruikshank also admitted that Woodard explained during the interview that had he not been planning to move to Michigan, he would not have made statements against Brown and Breshears because he is afraid they could hurt him. (Doc. 154, p. 25).

*Andrew Cooper*

Andrew Cooper is a United States ICE agent with HSI. (Doc. 154, p. 27 ). He testified that he assisted Agent Cruikshank with Woodard's interview. Cooper remembers that he and Cruikshank explained to Woodard that if he cooperated they would relay that cooperation to the Assistant U.S. Attorney (AUSA). (Doc. 154, p.30). There were no other promises, no threats, no physical violence, and Woodard was never told he would not be charged. (Id.)

After the verbal statement, Woodard was told that if he wrote a statement he could go home that night and his cooperation would be relayed to the AUSA. (Doc. 154, pp. 31, 33). The verbal statement included the same information as the written statement. Woodard was asked to write the last paragraph of Exhibit 2 to show that the statement was given of his own free will, without coercion, promises or threats.

*Melissa Conover*

Melissa Conover is an agent with ICE HSI. (Doc. 154, p. 39). She was in and out of the room during Woodard's interview and overheard some of the conversation. She made no promises or threats. (Doc. 154, p. 39). Conover took biographical information, and processed and fingerprinted Woodard. (Doc. 154, p. 40).

*Patrick Ronald Woodard*

Patrick Woodard is 24 years old. (Doc. 154, p. 42). He completed the 9th grade. (Doc. 154, p. 69). He has been arrested before, including for a felony, which resulted in a conviction. He testified he has never been interviewed by the police before but he has previously been advised of his rights and understands them. (Doc. 154, pp. 48-49).

Woodard testified that as Conover was processing him, Cooper was in a chair going over paperwork. Cooper was "antagonizing" Woodard, saying that he was a small fish and if he gave information nothing would happen to him and he could go home. (Doc. 154, pp. 43-44). Woodard told Agent Cooper that he didn't want to say anything and then Cooper promised if he made a statement he would be released that night. (Doc. 154, p. 44). Woodard signed his statement of rights 20 or 30 minutes later based on the promise that he would be released and no charges would be brought. (Doc. 154, p. 44).

Woodard testified that Cooper spoke to him for about 25 minutes while he was being processed. Cruikshank and Cooper then interviewed him for 10 to 15 minutes, and the written statement that followed took 15 minutes. (Doc. 154, p. 59). During that time, both Cruikshank and Cooper promised Woodard he would not be charged if he cooperated. (Doc. 154, pp. 60-61). He only wrote the last paragraph of Exhibit 2, stating that there were no threats or promises because the agents told him to do so. (Doc. 154, p. 63).

2. 10/6/12 Statement - (12/4/12 Evidentiary Hearing)

*Ian Cruikshank* -

Cruikshank testified that the only conversation that took place prior to the recording in Exhibits 1 and 2, pertained to the agents's identity and what they would speak about. (Doc. 201, p. 125). Prior to the recording there was no agreement about release, no discussion about the judge, and no promise to contact the prosecutor. (Doc. 201, pp. 125-126). Cruikshank had some difficulty with the recorder but it was resolved in less than one minute and the recording started. (Doc. 201, p. 126). Woodard was very talkative immediately. (Doc. 201, p. 127).

*Melissa Conover* -

Conover processed Defendant Woodard. (Doc. 201, p. 130). Prior to the recorded interview there were no promises made regarding how Woodard would be treated, whether he would be released, or what the agents might do so the AUSA or the judge would "go easy" on Woodard. (Doc. 201, pp. 130-131).

Conover did not hear Cruikshank make any promises. (Doc. 201, p. 131).

*<u>Patrick Ronald Woodard</u>* -

Woodard testified that a conversation occurred prior to the recording. (Doc. 201, p. 123). Agent Cruikshank told Woodard that if he cooperated, Cruikshank would talk to the AUSA to get him out on pre-trial release and get him a cooperation agreement so he would get a lighter sentence than his co-conspirators. (Id.).

*<u>Exhibits 1 and 2</u>* -

Exhibit 1 is the recorded statement taken from Defendant Woodard by Agent Cruikshank on 10/6/11. Exhibit 2 is a transcript of that statement. The parties stipulated to admission of the exhibits in lieu of testimony regarding what was said during the recorded interview. Conover was also present during that statement.

Cruikshank advised Woodard of his *Miranda* rights. Woodard waived his rights. (Ex.2, pp. 1-2). Questions were asked and answered without any discussion regarding benefits to Woodard until page 23. Woodard then asked how his talking to the agents would help him. Cruikshank responded that Woodard needed to do "exactly what you're saying you're doing but I don't believe everything that's coming out of your mouth. You need to be completely forthcoming...".

Questions and answers continued. On pages 35-37, Woodard complained that Cruikshank hadn't told him what he could do to help himself. Cruikshank responded that the best thing Woodard could do for himself is to be honest because when the prosecutor listens to the recording, he won't want to be as hard on him if Woodard has been honest. Conover told Woodard that they could give a good recommendation to the prosecutor and the judge would listen to the prosecutor.

On pages 37-38, Conover told Woodard that she couldn't tell him if he would be released at the hearing the next day because the judge makes that decision.

**DISCUSSION**:

The defendant argues that his verbal and written statements were involuntary and obtained in violation of his Fourth and Fifth Amendment rights because the agents promised on 7/21/11 that if he cooperated against the co-defendants he would not be charged and would

1  be released from custody that night. Woodard was not charged that night, and he was
2  released.
3  Woodard also claims that his 10/6/11 statement was involuntary because before the
4  recorded interview began, the agents promised Woodard he would be released from custody
5  and if he waived his rights, the agents would tell the AUSA about his cooperation and they
6  would try to get him a lighter sentence.
7  The Court concludes that, in considering the totality of the circumstances, there was no
8  coercive police conduct such that the defendant's will was overborne and which would
9  render his statements involuntary. *U.S. v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).
10  The government has the burden to establish the voluntariness of a confession by a
11  preponderance of the evidence. *Id.* The court must consider the totality of the circumstances
12  when deciding whether the agents used physical or psychological coercion or improper
13  inducement to obtain a defendant's statement, such that the defendant's will was overborne.
14  *U.S. v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009).
15  In determining whether a statement was taken in violation of due process, the court must
16  consider both the details of the interrogation and the defendant's characteristics, including
17  defendant's youth, intelligence, lack of *Miranda* warnings, length of detention, length and
18  repetition of questioning, and physical punishment. *Schneckloth v. Bustamonte*, 412 U.S.
19  218, 226, 93 S.Ct. 2041, 2047 (1973). The court should also consider the location of the
20  interrogation, the continuity of the questioning, the defendant's education and maturity, and
21  the defendant's physical and mental condition. *Withrow v. Williams*, 507 U.S. 680, 693-94,
22  113 S.Ct. 1745, 1754 (1993); *Taylor v. Maddox*, 366 F.3d 992, 1015 (9th Cir. 2004), cert.
23  denied, 543 U.S. 1038 (2004).
24  There is no disagreement that Woodard was advised of and waived his *Miranda* rights
25  prior to both interrogations. The parties disagree about whether Cruikshank and Cooper
26  promised the defendant certain benefits in return for his cooperation and statements. The
27  Court finds that the agents promised to inform the AUSA of Woodard's cooperation. They
28  did not promise Woodard that he would never be charged but may have told him that he

would not be charged on 7/21/11. They told him he would be released after he provided his written statement. Those promises were honored.

On 10/6/11, the agents told Woodard to be honest after giving him his *Miranda* warnings. Woodard waived his rights. Questions and answers were exchanged. Woodard's testimony that the agents promised he would be released from custody is belied by the recorded statement wherein Conover explains that it will be the judge who will make that decision in the court hearing the next day. The agents said they would provide a "good recommendation to the prosecutor" who would also listen to the recording and not "want to nail him to the wall" if he was honest. No other promises are found in Exhibits 1 and 2.

Even where agents promise to inform the prosecutor of cooperation and not to arrest and charge a defendant on that day, those promises are "not sufficiently critical to render the confession involuntary" even if the latter promise is broken. *U.S. v. Shears*, 762 F.2d 397, 402 n. 4 (4th Cir. 1985), citing *U.S. v. Robinson*, 698 F.3d 448, 455 (D.C. Cir. 1983); *U.S. v. Glasgow*, 451 F.2d 558 (9th Cir. 1971) (statements not involuntary where agents promise to advise AUSA of defendant's cooperation.).

Woodard is 24 years old with a 9th grade education. He has a history of prior law enforcement contact, including arrests and convictions, and has been previously advised of his rights. He was in custody for about 5 hours prior to being processed and questioned on 7/21/11. (Doc. 154, pp. 21-22). He was arrested at his home and questioned within 30 minutes of being arrested on 10/6/11. (Doc. 201, p. 127). Before questioning began, Woodard was advised of his *Miranda* rights, acknowledged that he understood them and waived his rights.

Two agents participated in the questioning on 7/21/11. They were wearing street clothes and had no weapons visible. Questioning occurred in a room with a table and chairs and a bank of computers. Other agents were in and out of the room, using the computers to process other suspects. Processing of Woodard took about 25 minutes. Questioning, including verbal and written statements, occurred over a 25 or 30 minute time period. There was no physical violence or physical coercion.

On 10/6/11, Woodard was questioned by Agents Cruikshank and Conover.[1] The only inducement by the agents was that they would make a recommendation to the AUSA and provide the prosecutor with a copy of the recorded statement.

Based on the totality of the circumstances, the court finds that Woodard's statements were freely and voluntarily given. They were not extracted by threats, violence, or express or implied promises sufficient to overbear his will or critically impair his capacity for self-determination.

**RECOMMENDATION:**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court **DENY** the motions to suppress statements. (Doc. 127, 167).

Defense counsel may serve and file written objections within 14 days. If objections are not timely filed, the party's right to de novo review may be waived. No reply to objections shall be filed unless leave is granted from the District Court.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 4th day of January, 2013

.

Leslie A. Bowman
United States Magistrate Judge

---

[1] Even if promises were made during the 7/21/11 interrogation, the 10/6/11 interrogation was sufficiently attenuated to render the statements admissible. *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285 (1985).